IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) No. 25 CV 8476
) Judge John R. Blakey
JAMES WILLIAMS, )
)
Defendant. )

**GOVERNMENT'S RESPONSE TO WILLIAMS' 28 U.S.C. § 2255
PETITION**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S.
BOUTROS, United States Attorney for the Northern District of Illinois, hereby
responds to James Williams' petition pursuant to 28 U.S.C. § 2255, as follows.
Williams argues that his trial and appellate counsel rendered ineffective
assistance. Williams' petition should be denied for the reasons set forth
below.

**District Court Proceedings**

*The Charges and Conviction*

On November 13, 2019, Williams was charged in a third superseding
indictment with conspiracy to commit armed bank robbery, in violation of 18

1

U.S.C. § 731 (Count One); bank robbery, in violation of 18 U.S.C. §§ 2113)(a) and 2 (Counts Two, Four, and Six); brandishing and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S. C. § 924(c)(1)(A)(ii) (Counts Three, Five, and Seven); possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Eight), and conspiracy to transfer a firearm to a convicted felon, in violation of 18 U.S.C. § 371 (Count Nine). R. 124.[1] The charges arose after Williams, brandishing an AK-47 and on one instance a second firearm, and co-defendant Alexis Handelman robbed three separate banks on three separate occasions over a three-week time span. R. 124; PSR, R. 382 at ¶ ¶ 17-22.[2]

Prior to trial, the parties scheduled a change of plea hearing. R. 314. The hearing was vacated at Williams' request. R. 315.

Williams proceeded to trial March 7, 2023. R. 320. The government presented evidence and testimony from 31 witnesses, including the following:

---

[1] Citations to the record in Williams' criminal case, 18 CR 339, are to "R.", followed by the applicable docket item number. Citation to the record in Williams' appeal, 23-3286, are to "App.R", followed by the applicable docket item number. Citations to the record in the current matter are to "CVR", followed by the applicable docket item number.

[2] Williams did not object to the factual basis set forth in the PSR, see R. 402 at 8, and thus has waived any objection to the facts therein. *United States v. Robinson*, 964 F.3d 632, 641 (7th Cir. 2020).

2

- Defendant's connection to the AK-47 rifle used in the three robberies. For example, approximately three months before the robberies, defendant's wife, Jessica Sweeney Williams, purchased an AK-47 rifle identical in appearance to the rifle used in all three robberies. Gov't Ex. 14; James Martillaro testimony. Defendant had several pictures and messages on his phone indicating he had access to the rifle and intended to use the rifle in May 2018, the month of the robberies. Gov't Ex. 68D-2, 68D-3, and D-4; Gov't Ex. 68E, pg 165-166.

- Defendant's connection to the pistol discharged in the third robbery. Specifically, the casing recovered from one bank matched the pistol defendant's wife had purchased between the second and third robberies. The gun box for that pistol was recovered in defendant's hotel room upon his arrest. Gov't Exs. 27, 44; Aimee Qulia Testimony; Herbert Hogberg Testimony.

- Defendant's fingerprint on a box of white gloves from an O'Reilly's Auto Parts store located near the first bank robbery. Gov't Ex. 13; Michelle Howard Testimony. The white gloves defendant purchased from O'Reilly's matched the gloves the robbers used in the first robbery. The store manager of that store identified defendant as the individual she sold the gloves to shortly before the first robbery. Julie Price Testimony.

- Witness identifications. Two witnesses identified defendant and Handelman as the robbers of the first bank based on pictures from the robbery. Gov't Exs. 41, 109A, 109B; Olivia Handelman Testimony; Matt Springer Testimony.[3]

- Proceeds of the bank robberies connecting defendant to the robberies. For example, just hours after the first robbery, defendant took a picture of several stacks of banded cash on a table at the Extended Stay America,

---

[3] At the time of the trial, Springer did not recollect having previously identified defendant. Special Agent Adam Hoogland recounted for the jury that during a prior interview, Springer identified defendant and initialed next to the images. Adam Hoogland Testimony.

where he was staying at the time of the robberies. The banded cash matched the bands used by one of the tellers from the first robbery. Gov't Ex. 68D-5; 68B, pg 51; Erin Price Testimony. Other evidence showed that defendant deposited or had access to large amounts of cash following the robberies. Gov't Ex. 39A, 39B (defendant's cash deposits); Gov't Exs. 96, 97, 26A, 27 (purchases of cell phones and guns in cash between robberies); Gov't Ex. 42 ($8,900 discovered on defendant's person hours after the third bank robbery).

- Defendant's connection to the three vehicles used in each of the bank robberies. For the second and third robberies, defendant rented two vehicles from Enterprise that matched the vehicles used in those robberies. Gov't Ex. 19; Gov't Ex. 21; Benjamin Chamberlain Testimony. Defendant switched out the license plates of the blue Nissan Rogue used in the second robbery to hide his connection to the vehicle. Gov't Ex. 15W; 18; 23E, Jose Huerta Testimony; Steven Boyd Testimony; Fernanda Marcalain Testimony. For the first robbery, defendant exchanged text messages with his sister indicating he had borrowed her vehicle and had instructed her to do something with that vehicle immediately following the robbery. Gov't Ex. 68E, pg. 20, 95.  Defendant's sister had a red sedan that matched the description of the vehicle used in the first robbery. Bianca Johnson Testimony.

- Defendant's phone's location. The phone was located near the bank robberies at the approximate times of the bank robberies, as well as at other locations connected to the robbers, such as the Extended Stay and the Party City where the red face masks used in the second robbery were purchased. Gov't Ex. 56A.

R. 360.

Near the close of the government's case, the district court inquired of Williams whether he intended to testify after being initially informed that

4

Williams chose not to testify. R. 399 at 121. After swearing Williams in, the district court informed Williams of the following:

> THE COURT: Okay. You have the right to testify if that's what you want to do; right. You can't be forced to testify. You have a Fifth Amendment right not to testify. But you also have the right to testify if, in fact, that's what you want to do and that's not a decision your attorney makes. That's a decision you make. There's a bunch of decisions your attorney makes but that's not one of them. So I have to ask you: Have you had an opportunity to discuss the advantages and disadvantages of testifying in this case with your attorney?
>
> THE DEFENDANT: No, I haven't.
>
> THE COURT: You haven't discussed that?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. All right. I'm going to give you a recess and you can discuss the advantages and disadvantages of testifying.

R. 399 at 121-122.

The district court subsequently allowed two recesses in which to allow Williams to confer with his attorney regarding his right to testify. R. 399 at 122-124. Thereafter, the district court had the following colloquy with Williams regarding his right to testify:

> THE COURT: . . . Sir, you're still under oath. Have you had an opportunity to talk with your attorney?
>
> THE DEFENDANT: Yes, I did.

5

THE COURT: Did you have enough time to talk to her about the advantages and disadvantages of testifying?

THE DEFENDANT: Yes, I did.

THE COURT: Do you want to testify in your case?

THE DEFENDANT: No, I do not.

THE COURT: Are you satisfied with the legal representation and advice you received in this case?

THE DEFENDANT: On this issue, yes.

THE COURT: Okay. What issue are you not satisfied with?

THE DEFENDANT: I'd rather not say at this point.

THE COURT: All right. You're choosing not to tell me?

THE DEFENDANT: Yes.

THE COURT: All right. All right.

R. 399 at 124.

At the close of the government's case, Williams moved for acquittal pursuant to Fed.R.Crim.P. 29, which the district court denied, finding "[b]ased on the record in front of me, there's been overwhelming evidence of his guilt as to all three bank robberies."    R. 399 at 143.

On March 15, 2023, the jury found Williams guilty of the charges in Counts One through Nine of the third superseding indictment. R. 337.

6

*Posttrial Motions*

On May 25, 2023, Williams moved for a new trial, arguing that the government's opening statement, which referenced co-defendant Alexis Handelman, her guilty plea, and her anticipated testimony, denied defendant a fair trial in light of the fact that Handelman never testified, and that the late disclosure of impeachment evidence regarding witness Julie Price violated *Brady v. Maryland* and likewise denied defendant a fair trial. R. 355. Following briefing by the parties, the district court denied the motion, noting again that "there's overwhelming evidence in this case.". R. 355, R. 360, R. 401.

*The Sentencing*

Prior to sentencing, a presentence investigation report was prepared, using the 2021 edition of the Guidelines Manual. R. 382 ¶ 28. The probation officer determined that Williams' advisory guidelines range was 476 to 523 months, based upon a total offense level of 31 and a criminal history category of VI; a guideline imprisonment range of 188 months to 235 months on Counts 1, 2, 4, 6, 8 and 9; and the mandatory consecutive § 924(c) sentences applicable to each of Counts 3, 5 and 7 and totaling 288 months. R. 382 at ¶ 172.

Williams was sentenced on November 14, 2023. R. 380, R. 383. During the sentencing hearing, the district court adopted the probation officer's guidelines calculations and determined that Williams' total offense range was 476 to 523 months. R. 402 at 9-13. During allocution, Williams stated, among other things:

> Your Honor, I have never had a problem accepting responsibility for my actions. Never. Even in this matter, I wanted to avoid those people coming in here and reliving their horrible experience over and over again. I wanted to avoid my mother driving down here every day to sit in this courtroom for hours and just to support her only son. But when you're 46 years old, it's really hard to be motivated to sign a plea for 27 to 30 years. That's a murderer sentence. That's a life sentence. Not for a life taken, but for $149,071.

R. 402 at 28.

The district court, after considering the parties' submissions, the parties' arguments and the § 3553 factors, sentenced Williams to a low-end-of-the-range sentence of 76 months' imprisonment. R. 402 at 37.

**The Appeal**

Williams filed a notice of appeal. R. 386. On July 23, 2024, Williams' appellate counsel moved to voluntarily dismiss the appeal, including with the motion an "Authorization and Consent to Dismissal of the Appeal," signed by Williams, which stated:

> I have been informed of my attorney's intention to move to dismiss my appeal. I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal.

App.R. 13.

On July 23, 2024, the Seventh Circuit granted the motion and dismissed the appeal. App.R. 14.

### Williams' § 2255 Petition and Memorandum

On July 23, 2025, Williams filed a petition pursuant to 28 U.S.C. § 2255. CVR 1. He argues that his trial counsel performed ineffectively regarding pretrial and trial issues. *Id.* He further contends that his appellate counsel performed ineffectively. CVR 1.

On December 2, 2025, Williams filed a memorandum expanding on his claims of ineffectiveness. CVR 11.

## ANALYSIS

In order to prevail on a claim of ineffective assistance of counsel, Williams must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The inquiry under the first component of this test is "highly deferential" to counsel.

9

*Id.* at 689.    Counsel is presumed to have made reasonable strategic judgments, and "there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)).    Strategic decisions are not second-guessed on review.    *United States v. Ruzzano*, 247 F.3d 688, 696 (7th Cir. 2001).

The second component of the *Strickland* test requires the petitioner to establish that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 689.   This requires Williams to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*   Williams must satisfy both prongs of the test in order to meet his burden, and a finding against Williams on either prong ends the inquiry.   *Id.* at 697. Williams has failed to meet this heavy burden, and his petition should be denied.

1.    **Williams' claims of trial counsel ineffectiveness lack merit.**

Williams alleges that his trial counsel performed ineffectively in failing to:

10

- meet with him a sufficient number of times and discuss trial strategy with him (CVR 11 at 7-8);

- discuss with him whether he should testify in his own defense (CVR 11 at 8);

- file substantive pretrial motions, including a motion to suppress key evidence, including cellular phones (CVR 11 at 9-14;

- advise him regarding the circumstances and consequences about entering a plea vs. proceeding to trial (CVR 11 at 11);

- perform an adequate investigation of the facts or law, review evidence, analyze the seized cellular telephone, interview the government's witnesses; consult with experts, or identify alternative theories of defense (CVR 11 at 12-14);

- seek recusal of the district court (CVR 11 at 14-16);

- challenge evidence collection (CVR 11 at 16-17, 23-24);

- seek independent investigative resources (CVR 11 at 18-19);

- challenge purported inconsistencies in witnesses' testimony (CVR 11 at 20-21);

- advise Williams regarding his sentencing exposure (CVR 11 at 24-25), and

- request case specific jury instructions (CVR 11 at 25).

All of Williams' claims lack merit either because he has failed to factually or legally substantiate his claims, failed to show that his attorney's performance was objectively unreasonable, or failed to show that even if his

11

counsel erred, it caused him any harm. This aspect of his petition should therefore be denied.

     *a.*     *Williams has failed to show that his counsel performed ineffectively regarding pretrial preparation.*

Williams argues that his trial counsel performed ineffectively regarding meeting with him to discuss trial strategy; failing to file pretrial motions; failing to suppress the search of two cellular telephones and the search of the rental car; failure to conduct an adequate investigation; challenge the collection of evidence, namely, the box of latex gloves and the Samsung cellphone; failure to challenge the fingerprint evidence regarding the gloves, failing to challenge inconsistencies in the statements of four witnesses, and failing to seek case specific jury instructions. CVR 11 at 7-21. None of his claims is meritorious.

     *i.*  *meetings*

Williams contends that his counsel met with him on only a handful of occasions and failed to discuss trial strategy him. CVR 11 at 8. Taking as true only for the purposes of argument (Williams provides no records or evidence to substantiate his claims regarding the number of meetings) his

contention that he had limited contact with his counsel, Williams has failed to show prejudice.

Williams does not explain how additional meetings would have led to a different result here, namely, his acquittal. His petition lists a large number of purported instances of ineffectiveness, which, as argued below, are all without merit. Williams has not presented a single viable strategy or witness or theory that would have led to a different result here and has not shown how additional meetings with his counsel would have benefitted him. There is no reasonable probability that the results of the proceeding would have been different with more contact. *Strickland*, 466 U.S. at 689, 694.

### ii. *pretrial motions*

Regarding Williams' claim that his counsel failed to file pretrial motions, Williams' trial counsel was at least the fifth counsel appointed to him. R. 9, R. 49, R. 82, R. 169, R. 258. The bulk of pretrial work in this matter was undertaken by prior counsel, who filed numerous motions *in limine* prior to his initial trial, some of which successfully limited the evidence that the government could introduce at trial, and one of which resulted in a mistrial for late turnover of discovery material. R. 92, R. 99, R. 101, R. 105, R. 106, R. 117, R. 119, R. 164, R. 217, R. 225, R. 227, R. 247. Williams does not specify

any pretrial motion, other than a motion to suppress which will be dealt with below, that would have been appropriate here, and fails to show that the filing of any other pretrial motion would have changed the outcome here.

### iii.  suppression motions

Williams argues that his counsel performed ineffectively in filing to move to suppress cellphones that he claims were "potentially" seized without a valid warrant.  CVR 11 at 9-10, 13-14.  He specifically identifies a Samsung phone that Williams claims was seized from a locked and parked rental vehicle. CVR 11 at 9, 13-14.

When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence, he must "prove the motion was meritorious." *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005).  Williams argues that multiple cellphones were "potentially" seized without a valid warrant.  CVR 11 at 9.  However, he identifies only one of the phones with enough specificity: the Samsung phone.  Given that he has not identified any other phones that he claims were seized without a valid warrant, this aspect of his petition fails with respect to any other cellular telephone besides the Samsung.

As to Williams' claim that the phone was seized without a valid warrant, he fails to present any argument whatsoever to challenge the warrant at issue,

14

but merely argues that the phone was improperly seized from the rental car. He does not cite to the warrant itself or include any discussion or legal authority supporting his claim that the warrant was invalid. Elsewhere in his petition, he refers to the search of the phone as warrantless. CVR 11 at 24. There was, in fact, a warrant to search the Samsung phone. R. 306 at 3.

Williams has waived any issues regarding the warrant used to search the Samsung by failing to develop his argument.[4] *Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008) (undeveloped and legally unsupported arguments are waived even when those arguments raise constitutional issues); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *United States v. Brown,* 899 F.2d 677, 679 n.1 (7th Cir. 1990); *United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) ("We will not entertain

---

[4] If Williams attempts to remedy this situation in his reply brief, it should be stricken. *Porco v. Trustees of Ind. Univ.*, 453 F.3d 390, 395 (7th Cir. 2006) (arguments made for the first time in reply brief are waived). Alternately, the government asks leave to file a surreply regarding any issues raised or developed, or any cases cited, for the first time in Williams' reply brief.

15

[defendant's] half-hearted and conclusory argument, as it lacks legal or factual support of any kind . . .[w]e have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived . . .").

This leaves only Williams' claim that his trial counsel should have moved to suppress the phone based on its allegedly improper seizure from the rental car. This argument, too, is undeveloped and contains no facts and no cites to the record to support his suppression theory.

Williams cites to a single case in support of his argument: *United States v. Edwards*, 242 F. 3d 928 (10th Cir. 2001). In *Edwards,* a police officer made a warrantless arrest of the defendant based on the mistaken belief that he had robbed the City National Bank. *Id.* at 640. Shortly after the arrest but before the officer searched the defendant's vehicle, the officers learned that the bank had not been robbed. During the time period when it was unclear exactly who knew that the City National Bank had not been robbed, the police decided to search the rental car being used by the defendant and his accomplice, finding incriminating evidence. *Id.* at 637. The appellate court found that the district court erred in finding that the search of the car was a valid search incident to arrest and further found that it was not an inventory search, nor was it supported by probable cause. *Id.* at 641.

16

*Edwards* is easily distinguished from Williams' situation. First, the warrantless arrest of Williams was entirely valid as there was ample probable cause to believe that he had robbed the bank.[5] Secondly, the search of the rental car was a proper search both incident to arrest and pursuant to the automobile exception.

Officers may search an automobile incident to the lawful arrest of its recent occupant under two circumstances: when "the arrestee is within reaching distance of the passenger compartment at the time of the search," *United States v. Reedy*, 989 F.3d 548, 555 (7th Cir. 2021) (quoting Arizona v. Gant, 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), or when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id*.

---

[5]   See R. 380 at ¶ 21: "On May 29, 2018, law enforcement traced the license plate of the Nissan Rogue used in the May 21, 2018, robbery to Enterprise-Rent-A-Car ("Enterprise"). An employee of Enterprise in Palatine, Illinois, informed law enforcement that Williams rented a blue Nissan Rogue on May 15, 2018, and returned the vehicle on May 22, 2018. When he returned the car, Williams requested a different car, stating that the Nissan had bad gas mileage. Although an employee explained that Ford Fusions have worse gas mileage than the Nissan, the defendant rented a 2018 black Ford Fusion. Williams failed to return the Ford Fusion on May 29, 2018, when the lease on the vehicle ended. Enterprise employees made multiple calls to Williams, but he did not return the calls. On May 31, 2018, an Enterprise employee contacted law enforcement and conveyed that Williams called and said he would return the Ford Fusion that day by 4:30 p.m. On May 31, 2018, Williams was seen entering Enterprise and was arrested. At the time of his arrest, $8,900 was found on Williams' person."

*United States v. Davis*, 119 F.4th 500, 504–05 (7th Cir. 2024). In this case, given that an officer had just seen Williams exit the vehicle and enter the Enterprise office just before the arrest, it was reasonable to believe that the vehicle contained evidence of the bank robbery.

Further, in addition to the "search incident to arrest" exception, other well-established authority makes clear that, under the "automobile exception," an officer may search a vehicle when the officer has probable cause to believe that the vehicle contains evidence of criminal activity. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam); *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This basis for the search is equally valid, given that the vehicle was used in one of the robberies and Williams had just been seen exiting it, regardless of whether there was probable cause for his arrest.

Since *Edwards* is out-of-jurisdiction authority, it has never been cited in this jurisdiction, and it is easily distinguishable on its facts, and Williams has failed to support his argument with any other authority or any facts to support any theory of suppression, he has failed to show that a motion to suppress the recovery of the Samsung phone would have been successful. He therefore has

18

failed to show that his counsel performed ineffectively in not moving to suppress the recovery of the phone.

### iv. pretrial investigation

Williams argues that his trial counsel performed ineffectively in failing to undertake an independent investigation to verify, corroborate or challenge the government's evidence. CVR 11 at 12-14, 18-19. He contends that he was prejudiced thereby because "comprehensive investigation *could* have uncovered additional evidence to challenge the claim that Williams used the gloves allegedly linked to the robberies . . scrutinizing prior statements by witnesses and authorities *could* have undermined the prosecution's sentencing recommendation . . . independent evidence *might* have revealed inconsistencies or contradictions in the government's case." *Id.* at 19, emphasis added. He has failed to show that his counsel performed ineffectively.

A petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced. *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990); see also *Raygoza v. Hulick*, 474 F.3d 958, 961 (7th

19

Cir. 2007) (defense counsel's failure to investigate murder defendant's alibi claim was worthy of habeas relief where petitioner had affidavits from seven alibi witnesses). Williams has clearly not met this burden. He does not explain how or what his counsel should have investigated or what evidence would have been provuced. He has failed to provide any affidavits of any witnesses or even name a single exculpatory witness. Given this record, and his failure to provide a comprehensive showing of what an investigation would have produced, he has failed to show that his counsel performed ineffectively regarding an investigation.

Moreover, Williams has failed to show prejudice, which *Strickland* defines as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Williams argues that an investigation "could have" uncovered additional evidence, "could have" undermined the prosecution's sentencing recommendation and "might have" revealed inconsistencies or contradictions in the government's case, CVR 11 at 19, but this is pure speculation and does not rise to the level of a reasonable probability that would undermine confidence in the outcome here. See *United States v. Lathrop*, 634

20

F.3d 931, 939 (7th Cir. 2011) (defendant who "neglected to tell us what evidence would have been gleaned from additional investigation" failed to satisfy *Strickland's* prejudice prong).

Williams has also failed to carry his burden regarding his other claims regarding a review of the evidence, analysis of the seized cellular telephone, interviews of the government's witnesses; consultation with experts, or alternative theories of defense. As noted above, he has the burden of showing a reasonable probability of a different result. He has failed to show that interviewing the government's witnesses or consulting with experts would have changed the outcome here: he does not identify any government witness that would have exculpated him and does not identify any expert who would have exonerated him here.

He claims that his counsel failed to review the contents of his Samsung phone and asserts that it "purportedly" contained videos of him holding cash before the bank robberies at issue. As an initial matter, that Williams cannot say with certainty that the phone contains exculpatory evidence, but refers to it as "purported" is enough to doom his claim since he fails to show a reasonable probability of a different outcome. *See United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011). He does not claim that the phone contained any other

21

exculpatory evidence. Even if his assertion is true (he offers no proof but his own word), there is nothing exculpatory about videos of him holding cash. Indeed, this evidence, without testimony or documentation regarding the source of this cash, could be considered extremely prejudicial to Williams and could have caused the jury to speculate on what other activities he was involved in. It was a reasonable strategy for his counsel not to take this risk. Moreover, even if his counsel had extracted the videos and lined up witnesses to testify regarding the necessary foundation for the source of the cash, given the overwhelming evidence in this case well beyond the photographs of him holding cash in the wake of the robberies, it would not have made a difference in the outcome.

Finally, Williams contends that his counsel should have called witnesses in his defense. However, in order to prevail on this claim, he must demonstrate what the missing witnesses would have said and how their testimony could have affected the outcome of the case. See, e.g., *United States v. Farr*, 297 F.3d 651, 658–59 (7th Cir.2002) ("An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed

22

instruction on what this information may be or where it might be found.") He has failed to do so.

> v.     evidence collection

Williams argues that his trial counsel performed ineffectively in failing to challenge the collection of evidence, namely, the box of latex gloves and the Samsung cellphone, as well as fingerprint evidence regarding the gloves. CVR 11 at 16-17, 23-24.

Regarding the collection of box of latex gloves, Williams claims that his counsel should have challenged the chain of custody, contending that the lack of an inquiry left open the possibility of contamination or mishandling. However, he does not cite to or address the trial testimony on this issue and does not indicate what evidence was lacking in the chain of custody, only that the box was closed when presented at trial.   Chain of custody focuses on the sequence and integrity of the movement of evidence, from the time of its recovery to its presentation in court. *United States v. Marzette*, 105 F.4th 1014, 1018 (7th Cir. 2024), citing *United States v. Craig*, 573 F.2d 455, 478 (7th Cir. 1977). Absent any evidence of tampering, the government's chain-of-custody evidence receives a presumption of regularity.   *Marzette, id*. When the demonstrated chain of custody is "substantially complete" and there is no

23

indication of evidence tampering or wrongdoing by those handling the evidence, the admission of the evidence is upheld. *See United States v. Lott*, 854 F.2d 244, 250–51 (7th Cir. 1988). Williams has failed to show that the chain was incomplete or any wrongdoing occurred.

Similarly, Williams' only claim of irregularity regarding the Samsung phone's collection is that the agent's report indicated it was found in the front passenger seat but that counsel observed it to be on the center console. Williams does not cite to any evidence for this observation. This contention is not enough to defeat the chain of custody given that the center console is merely inches from the front passenger seat.

Regarding the fingerprint examination, prior counsel challenged the fingerprint examiner's testimony and sought to exclude it. R. 92 at 24-26. The motion was denied based on an agreement by the parties, see R. 105 at 4. Williams does not explain what more his trial counsel could have done regarding the examination. He claims that his counsel should have objected to the admissibility and reliability of the evidence, but does not state how his counsel should have done this and cites no cases in his behalf on this issue.

Though Williams claims that expert testimony would have addressed his contentions regarding the fingerprint examination, he cites none and fails to

24

meet his considerable burden on this issue. In order to demonstrate that trial counsel's failure to consult with or call an expert constituted deficient performance, a movant must demonstrate that "an expert capable of supporting the defense was reasonably available at the time of trial." *Ellison v. Acevado*, 593 F.3d 625, 634 (7th Cir. 2010). A movant's speculation regarding the testimony of an unnamed expert witness is not sufficient to raise an ineffective-assistance-of-counsel claim. *Anderson*, 61 F.3d at 1298-99. A petitioner must put forward sufficiently precise information about the nature of the expert's testimony and the reason it would have made a difference. *Id.*; *see also United States v. Farr*, 297 F.3d 651, 658-59 (7th Cir.2002). A petitioner cannot show prejudice where s/he fails to identify the prospective witness or indicate, with an affidavit, what their testimony would have been. *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991). Further, the petitioner must show, in addition to showing that the witness was available to testify in his defense, that there is a reasonable probability the witness' testimony would have made a difference in the outcome. *George v. Smith*, 586 F.3d 479, 486 (7th Cir.2009).

25

*vi. witness testimony*

Williams argues that his trial counsel performed ineffectively regarding the cross examinations of four trial witnesses: Julie Price, Officer Daniel Sovera, Officer Debra Lucas, and James Wheaton. CVR 11 at 20-21. He contends that his trial counsel should have conducted additional cross examination of these witnesses. His arguments lack merit.

A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would. *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003); *United States v. Payne*, 741 F.2d 887, 891 (7th Cir.1984) ("A competent trial attorney might well eschew objecting ... in order to minimize jury attention to the damaging material"). Often an attorney must take risks on cross-examination, and when hostile witnesses are involved, these risks may backfire: such risk taking, however, does not necessarily amount to ineffective assistance. *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003).

As an initial matter, Williams makes a variety of statements regarding the testimony of these witnesses, but fails to cite to the trial transcript and leaves the district court to rely solely on Williams' assertions regarding what

26

was said at trial. In failing to cite to the record, he has waived these arguments. *Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir.2008) (undeveloped and legally unsupported arguments are waived even when those arguments raise constitutional issues).

The foregoing notwithstanding, Williams claims that his counsel should have crossed examined Ms. Price regarding a statement she made in a media interview that she was uncertain how law enforcement collected the box of gloves, and that she gave an officer a plastic bag to collect the gloves. Williams fails to substantiate his claim with any evidence: he fails to provide any evidence or transcript regarding the alleged media interview and has thus failed to substantiate that his counsel could have cross examined Ms. Price on this issue. At trial, Ms. Price testified that she gave the officer a plastic bag but she did not recall how he got the box of gloves into the plastic bag. R. 395 at 310. This is not inconsistent with the alleged media account and there would have been no reason to cross Ms. Price on the media account.

Williams' contentions regarding Officer Daniel Sovero's testimony are equally nonmeritorious. He claims that Officer Sovero testified that he used a paper bag to recover the evidence, though in a 2019 report he denied receiving a plastic bag from Ms. Price. CVR 11 at 20-21. These two statements are not

27

inconsistent and would not have been proper cross examination. Moreover, Williams' counsel *did* cross Officer Sovero on whether he used a paper bag or a plastic bag when he recovered the box of latex gloves, and he stated that he used a paper bag. R. 395 at 89-90.

Williams contends that his counsel should have cross examined Officer Debra Lucas regarding the chain of custody of the box of gloves, particularly that the chain of custody receipt failed to specify the exact item and that it was signed by an unidentified person. CVR 11 at 21. Ottawa Police Officer Lucas identified the chain of custody document for the box of gloves. R. 395 at 325 et. seq. She testified that the evidence consisted of a paper bag containing an unopened box; though the contents of the box was not specified, she knew it to contain gloves since she entered that information in the computer system; the chain of custody document reflected Officer Dan Sovero's signature on the first line; the second line was the date, she signed on the third line, and she eventually checked out the evidence to Detective Booras. R. 395 at 327-335. Williams does not identify the allegedly illegible signature on the chain of custody document. Cross examining Officer Lucas on the signatures or her description of the contents of the box would have added nothing to the defense case and would not have exculpated Williams.

28

Williams argues that his counsel should have cross examined James Wheaton on Williams' lack of a FOID card and the claim that all firearms-related discussions were attributed to Jessica Williams which he claims was false. Williams does not explain how his counsel could have properly cross examined Mr. Wheaton on these issues without introducing into evidence the lack of a FOID card, which could severely prejudice Williams, given the evidence of his handling of firearms on multiple occasions, or introducing testimony regarding the conversation from either Jessica Williams or Williams himself, which could have seriously backfired on counsel. It was a wise strategy not to cross Mr. Wheaton on this issue.

*vii. jury instructions*

Williams argues that his counsel performed ineffectively in failing to request case-specific jury instructions, contending that this alleged oversight left the jury without proper legal guidance. CVR 11 at 25. However, he does not specify which case-specific instructions he believes his counsel should have sought, what the legal basis for them would have been and that they would have changed the outcome in this case. See *United States v. Robinson*, 143 F.4th 775, 783–84 (7th Cir. 2025) ("As for trial counsel's failure to request a special jury instruction, Robinson has not come forward with any precedent

29

supporting his entitlement to such an instruction . . . we disagree that his counsel's failure to request one plainly fell below an objective standard of reasonable professional conduct . . . [and] hold that Robinson has not demonstrated that his trial counsel rendered constitutionally inadequate assistance.")  This aspect of his petition should therefore be denied.

    *b.*    *Williams stated under oath that he did not wish to testify.*

Williams argues that his counsel performed ineffectively in failing to prepare him to testify despite his purported repeated requests to do so.  CVR 11 at 8. However, Williams stated under oath that he had discussed the issue with his attorney and he did not wish to testify.  His counsel did not perform ineffectively regarding this issue.

The decisions whether to plead guilty or proceed to trial; whether to be tried by judge or jury; whether to appeal an adverse verdict; whether to forgo the assistance of counsel; and whether to testify are constitutional rights so fundamental that they are deemed personal to the accused, and "he alone may decide whether these rights will be exercised or waived." *United States v. Jones*, 844 F.3d 636, 645 (7th Cir. 2016), citing *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir. 1984).

As noted above, near the close of the government's case, the district court informed Williams of his right to testify. R. 399 at 121. The district court told him that he could not be forced to testify; that he had a Fifth Amendment right not to testify; that he also had the right to testify if, in fact, that's what he wanted to do, and that the decision was his to make and not his attorney's decision. *Id.* The district court then gave Williams two recesses in order to discuss the issue with his attorney. R. 399 at 122-124. Williams then informed the district court that he had had the opportunity to talk with his attorney, that he had had sufficient time to discuss the advantages and disadvantages of testifying with her, that he did not want to testify in his case, and that he was satisfied with the legal representation and advice she had given him on this issue. R. 399 at 124. Williams is bound by that testimony, which defeats his argument. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Williams' claim of ineffectiveness regarding testifying in his defense are belied by the trial transcript and his under-oath statements. This aspect of his petition should therefore be denied.

31

         c.       *Williams has failed to show that his counsel performed ineffectively regarding plea negotiations.*

Williams argues that his attorney performed ineffectively in failing to advise him regarding the circumstances and consequences of entering a plea versus proceeding to trial and failing to inform him of his sentencing exposure. CVR 11 at 11, 24-25. He contends that this undermined his ability to make a knowing, voluntary and intelligent choice regarding his defense. His contentions are unfounded: Williams' counsel engaged in plea negotiations, obtained a favorable plea agreement dismissing two of the three § 924(c) charges, which carried mandatory consecutive sentences, and set this matter for a change of plea. However, Williams refused to accept the plea because he felt that the sentence was too long. His claims of ineffectiveness regarding the plea lack merit.[6]

As noted above, the parties set this matter for a change of plea hearing for February 27, 2023. R. 314. Williams' counsel negotiated a plea in which Williams would plead guilty to Counts Two, Four, and Six, which charged

---

[6] As of this writing, government counsel has been unable to reach Ms. Bezner and to discuss her conversations with Williams regarding the proposed plea and Williams' exposure at trial. Counsel will supplement this aspect of the response as more information becomes available.

Williams with bank robbery in violation of 18 U.S.C. § 2113(a), and Count Three, which charged Williams with brandishing a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). See Exhibit A, ¶ 5. The agreement set forth the following regarding the maximum penalties:

- Count Two carries a maximum sentence of 20 years' imprisonment;

- Count Three carries a maximum sentence of life imprisonment and a mandatory minimum consecutive sentence of at least seven years;

- Count Four carries a maximum sentence of 20 years' imprisonment;

- Count Six carries a maximum sentence of 20 years' imprisonment;

- the total maximum sentence is life imprisonment.

Exhibit A, ¶ 7.

The plea agreement also set forth that Williams was entitled to a two-level reduction in his total offense level if he continued to accept responsibility, and that his advisory guidelines range was 292 to 365 months' imprisonment. Exhibit A, ¶¶ 13(b)(xix), 13(d)(ii). The agreement also reflected that at sentencing, the government would move to dismiss the remaining counts of the third superseding indictment (namely, Counts One, Five, Seven, Eight and Nine). Exhibit A, ¶ 20, see third superseding indictment, R. 124.

33

The change of plea hearing was vacated at Williams' request. R. 315. At sentencing, Williams explained that he was willing to accept responsibility for his actions, but that he felt that sentence set forth in the plea agreement 27 to 30 years, was too long. R. 402 at 28 (". . . when you're 46 years old, it's really hard to be motivated to sign a plea for 27 to 30 years. That's a murderer sentence. That's a life sentence. Not for a life taken, but for $149,071.").

"The Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (citation omitted) (citing *Lafler v. Cooper*, 566 U.S. 156 (2012)). To succeed on a claim of ineffectiveness during plea negotiations, a petitioner must not only establish that counsel was deficient, but must also show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

Williams' counsel achieved an excellent result here in negotiating a plea

34

agreement that would have resulted in the dismissal of five of the nine counts against him, including Counts Five and Seven, which, like Count Three, carried mandatory consecutive sentences of at least seven years pursuant to 18 U.S. C. § 924(c)(1)(A)(ii). Williams knew from the plea agreement that he faced a maximum sentence of life. However, as he stated at sentencing, he chose to reject the agreement because in his opinion the advisory guidelines sentence was too high. Common sense should have told him that rejecting a plea that dismissed five counts against him would leave him vulnerable to an even higher sentence, possibly the maximum of life as set forth in the agreement.

Williams clearly regrets not taking the favorable deal that his counsel negotiated for him. However, his efforts to blame his fate on his attorney's performance lack merit. Williams' own words at sentencing make it clear that his counsel discussed the plea with him, he understood its terms, and he chose to reject it. His claim of ineffectiveness regarding his sentencing exposure and the consequences of rejecting the plea lack merit.

35

     *d.*    *Williams' counsel did not perform ineffectively in opting not to move for recusal of the district court.*

Williams argues that his counsel performed ineffectively in failing to move to recuse the district court pursuant to 28 U.S.C. § 455 as a result of the Court's statements to prosecution witness Alexis Handelman as she took the witness stand (CVR 11 at 14-16). He contends that the district court erred in referring to a witness by her first name; telling the witness to call the district court by his first name; expressing empathy for her regarding the difficulties of testimony. *Id.* He asserts that these actions were a basis for recusal as they called the district court's impartiality into doubt. *Id.* His counsel did not perform ineffectively in opting not to move to recuse the district court.

A federal judge must "disqualify himself in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) has been termed the "catchall recusal provision, covering both interest or relationship and bias or prejudice grounds." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (internal marks omitted). This is an objective inquiry into "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89 F.3d 350, 353 (7th Cir. 1996); see also *Ramirez v. Elgin Pontiac GMC, Inc.*, 187 F.

Supp. 2d 1041, 1044 (N.D. Ill. 2002). The moving party must show that "an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case." *United States v. Barr*, 960 F.3d 906, 906 (7th Cir. 2020) (quoting *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016)) (internal marks omitted). In other words, "the search is for a risk substantially out of the ordinary." *Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

Williams' only claim of judicial bias arises from this one instance, which occurred outside of the presence of the jury involving a couple of sentences to a witness who eventually refused to testify. He does not argue that any of the district court's rulings or remarks to him or his counsel, or the judge's sentence (a presumptively reasonable low-end sentence, see *United States v. Major*, 33 F.4th 370, 384–85 (7th Cir. 2022)), shows any evidence of bias against him or partiality. This one instance involving the witness does not rise anywhere near the level of showing that an objective, disinterested observer fully informed of the reasons for seeking recusal would entertain a significant doubt that justice would be done in the case, as required by the case law. See *United States v. Barr*, 960 F.3d 906, 906 (7th Cir. 2020). The statements made by the district court amount to nothing more than an effort to make an obviously

37

reluctant witness comfortable enough to testify, which clearly were not effective since the witness never testified.

No reasonable observer would think that the statements at issue would require recusal. "[A] reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion." *In re Sherwin-Williams Co.*, 607 F.3d 474, 478 (7th Cir. 2010). Williams' view of the remarks are an effort to view this case "through the lens of a 'hypersensitive or unduly suspicious person' rather than a 'well-informed, thoughtful observer.'" *Barr*, 960 F.3d at 919-20. See also *In re United States*, 666 F.2d 690, 694 (1st Cir. 1981) ("[A] judge once having drawn a case should not recuse [her]self on an unsupported, irrational, or highly tenuous speculation; where he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges.").

Moreover, his failure to show that his counsel performed ineffectively notwithstanding, Williams has failed to meet the second prong of the *Strickland* test, namely, a reasonable probability that the results of the proceeding would have been different. *See Strickland,* 466 U.S. at 694;

38

*Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997) ("[t]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong"). As noted above, the evidence against Williams was overwhelming, and he received a low-end sentence. He does not argue that there is a reasonable probability of a different outcome – an acquittal or a lower sentence – had his counsel moved for recusal.

Williams' counsel did not err in opting not to bring a motion that had no chance of success and that would not have changed the outcome here. This aspect of his petition should be denied.

### 2. Williams has failed to show that his appellate counsel performed ineffectively.

Equally unsuccessful is Williams' claim that his appellate attorney performed ineffectively in failing to communicate with him, allow him to participate in the appeal and include additional issues, advise him correctly regarding the due date for his § 2255 petition, and raise stronger issues than those raised on appeal. CVR 11 at 25-27. He also contends that his appellate counsel entered into a trial stipulation without his informed consent. *Id*. He has failed to show that his appellate counsel performed ineffectively and this aspect of his petition should be denied.

39

As an initial matter, as noted above, Williams voluntarily dismissed his appeal after his counsel filed a motion pursuant to Fed.R.App.P. 42(b) and attached a signed "Authorization and Consent to Dismissal of the Appeal," in which Williams concurred with the decision to dismiss the appeal and waived the right to object or raise any points on appeal. App.R. 13. Since Williams has waived the right to object or to raise any points on appeal, he has waived the right to contend that his appellate counsel performed ineffectively regarding identification and pursuit of issues on appeal. See *Muskin v. United States*, No. 14 C 1934, 2014 WL 2038253, at *4 (N.D. Ill. May 16, 2014) ("Muskin's argument is belied by the fact that attached to his motion to dismiss the appeal is his signed statement concurring with his appellate attorney's decision to voluntary dismiss the appeal. In that statement, Muskin also waived his right to object or raise any issues on appeal. (12–2965, R. 17.) Accordingly, this ineffective assistance of appellate counsel claim fails because it is factually baseless.")

The foregoing notwithstanding, Williams has failed to identify any viable issues for appeal. To prevail on a claim of ineffective appellate counsel, Williams must establish that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise on appeal.

*Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009), citing *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994). Appellate counsel are not required to raise every conceivable issue, or even all the issues of colorable merit the defendant insists be raised. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Deficient performance is shown only if the neglected issues are "clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288, (2000), quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). Williams has failed to meet this burden. Though he claims that issues regarding witness credibility and critical evidence such as fingerprint and cellphone data could have been raised, he has failed to indicate what rulings should have been appealed, what the basis for challenging the ruling would have been, and, most importantly, that it would have changed the outcome of the case.

Williams' claim that his counsel erroneously informed him that the due date for his § 2255 petition was November of 2024 and failed to assist him in preparing the motion is baseless for three reasons. First of all, this may have been correct advice, depending on when Williams asked the question. Had

41

Williams filed no appeal, then his § 2255 petition would have been due on November 28, 2024. See When a defendant does not appeal his conviction or sentence, the judgment becomes final for purposes of § 2255 when the deadline for filing a notice of appeal expired, fourteen days after the entry of the judgment. *Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013); *United States v. Clay*, 537 U.S. 522, 524–25, 532, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); Fed.R.App.P. 4(b). Secondly, any error regarding the due date for Williams' § 2255 was harmless, since he timely filed his petition within one year of the dismissal of his appeal. Thirdly, Williams has no right to counsel in pursuing § 2255 and his appellate counsel had no obligation to prepare the petition for him. There is no right to counsel in postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

As for Williams' claim that his appellate counsel failed to inform him of his right to file a petition for certiorari, CVR 11 at 27, as noted above, Williams waived the right to pursue any issue on appeal, his appeal was voluntarily dismissed with his consent, and there would have been no reason for his counsel to advise him regarding a petition for certiorari.

42

Finally, Williams contends that his appellate counsel, Kent Carlson, filed a stipulation in the district court as trial counsel without Williams' informed consent.   CVR 11 at 27.   He does not cite to the district court record in support of his contention.   *Id.*   His claim is unfounded.   Mr. Carlson first appears on the district court docket on March 14, 2024, long after the trial concluded, at the direction of the appellate court "for purposes of accessing District Court documents, including sealed docket entries not filed *ex parte.*" R. 410.   According to the docket sheet, Mr. Carlson did not file any documents in the district court record.

None of Williams' contentions regarding his appellate counsel is meritorious.   This aspect of his petition should be denied.

## CONCLUSION

An evidentiary hearing must be held if the petitioner "alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States,* 574 F.3d 847, 850 (7th Cir. 2009).   When reviewing the evidence, courts draw all reasonable inferences in the light most favorable to the government. See *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). However, no evidentiary hearing is necessary if "the motion and the files and records of the case conclusively show

43

that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001), quoting Title 28 U.S.C. § 2255.

As argued above, none of Williams' arguments is meritorious. Therefore, his petition should be denied in its entirety, without a hearing, consistent with the case law cited above.

Respectfully Submitted,

ANDREW S. BOUTROS
United States Attorney

By:    */s/ Madeleine S. Murphy*
MADELEINE S. MURPHY.
Assistant U.S. Attorney
219 S. Dearborn, 5th Floor
Chicago, IL 60604
(312) 886-2070

Dated:   March 5, 2026

44

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the aforenamed document was served pursuant to the district court's ECF system as to ECF filers, as well as by U.S. mail on the below-identified individual, on March 5, 2026:

James D. Williams
No. 52171-424
USP Canaan
P.O. Box 300
Waymart, PA 18472

/s/    *Madeleine Murphy*
MADELEINE S. MURPHY
Assistant United States Attorney
219 South Dearborn Street - 500
Chicago, Illinois 60604
(312)   886-2070